IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.                                                                    CRIMINAL ACTION NO. 3:12-00150

DESHAWN KING

**MEMORANDUM OPINION AND ORDER**

The Court heard argument and evidence on August 30 and September 4, 2012 in this case. On September 5, 2012, the Court issued an Order (ECF No. 58) which, *inter alia*, **DENIED** on the merits Defendant's Motion to Suppress Evidence from Unlawful Stop (ECF No. 26), for the reasons stated on the record, and also **DENIED** in part as moot Defendant's Motion to Suppress Defendant's Oral and Audio Statements, specifically those portions regarding Defendant's statements on June 20, 2012 (ECF No. 27). The Court issued another Order on September 5, 2012 (ECF No. 61), which, inter alia, **DENIED** Defendant's motion to suppress the evidence obtained from the searches (ECF No. 25), and **GRANTED** the remaining portion of Defendant's Motion to Suppress Defendant's Oral and Audio Statements, specifically as to the statements made by the Defendant when questioned about the firearms (ECF No. 27). The Court now wishes to explain its reasoning for these decisions.

I. The Searches Conducted and Statements Obtained on December 9, 2011

Weighing the evidence presented at the hearings, the Court concludes that the officers had consent to enter the premises of Defendant and his girlfriend, Shawnice Jones, to look for Sir

Jeffrey Carroll and that, in doing so, an officer observed two firearms in plain view. Then, officers obtained consent to conduct a full search of the premises and found an additional firearm. The Court also concludes that by bringing the Defendant back into the attic to question him about the firearms, officers conducted what amounted to a custodial interrogation without first providing <u>Miranda</u> warnings. Therefore, the Court **DENIES** Defendant's motion to suppress the evidence obtained from the consensual searches (ECF No. 25), but **GRANTS** the remaining portion of Defendant's motion to suppress oral and audio statements, specifically as to the statements made by the Defendant when questioned about the firearms (ECF No. 27).

Two agents testified as to the officers' entering into Defendant's residence. They described the "knock and talk" conducted at Defendant's residence as a result of information that Sir Jeffrey Carroll, whose residence had just been searched pursuant to a search warrant, had fled to Defendant's residence to avoid arrest. Each officer testified that they approached Defendant's door, knocked and announced themselves, and were met by Defendant and Shawnice Jones. The officers recounted that they asked if Carroll was inside, and the Defendant nodded "yes" while stating "no." Then Defendant opened the door further and allowed the officers to enter. The officers reasonably believed Defendant and Ms. Jones consented.

Once inside, one agent went upstairs to the attic and observed a large box behind which Carroll may have been hiding. Upon closer inspection, the agent saw two firearms in the open box. Having discovered several firearms in Carroll's residence before going into Defendant's residence, the agent had sufficient cause to believe that the firearms were evidence of criminal conduct. Under the "plain-view" doctrine, warrantless seizures of incriminating evidence are permitted "when (1) the officer is lawfully in a place from which the object may be plainly viewed; (2) the officer has a lawful right of access to the object itself; and (3) the object's

incriminating character is immediately apparent." *United States v. Jackson*, 131 F.3d 1105, 1109 (4th Cir. 1997) (citing *Horton v. California*, 496 U.S. 128, 136-37 (1990), and *United States v. Williams*, 41 F.3d 192, 196 (4th Cir. 1994)). Therefore, seizure was proper.

After locating and arresting Carroll inside Defendant's residence, and finding two firearms in the attic, the officers desired a more thorough search of the premises. Knowing that Ms. Jones may have been a tenant as well as Defendant, officers separately asked each of them for consent to search. Ms. Jones testified that her response was something to the effect of "You've already searched once, so I guess so." She did not testify that she refused consent or even objected. As someone with actual, or at least apparent, authority to consent, the officers reasonably relied on her response to conduct a further search, which revealed a third firearm. *See United States v. Matlock*, 415 U.S. 164, 170 (1974) ("[T]he consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared"); *see also Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990) (holding that an officer's reasonable belief that a given person has authority to consent to a search of an area suffices to uphold that search). Based on these facts, the firearms were discovered and seized by proper means. This portion of Defendant's motions is therefore **DENIED**.

Every witness agreed that immediately after the first officers entered the premises, other officers led Defendant and Ms. Jones through the doorway and down the steps to the sidewalk area. Some officers had guns drawn as they entered. Others may have kept their firearms ready to draw as the search inside took place. In addition to several officers who entered the residence to search for Carroll, there were a number of other officers around the building and front sidewalk area. Defendant and Ms. Jones were separated and kept outside while the officers inside located

and arrested Carroll. After securing Carroll and the premises, an agent decided to question Defendant about the firearms found in the attic. At least one officer brought Defendant from outside up to the attic. Apparently, there were several officers in the attic when Defendant arrived there and questioning ensued. The Government concedes that no <u>Miranda</u> warnings were provided to Defendant. As described by the agent, Defendant was shown the guns where the agent had observed them and asked a series of questions, including questions or statements by the agent which explicitly and implicitly challenged Defendant's explanation for the presence of the firearms in his residence, given his status as a felon. In response Defendant admitted that he had allowed Carroll to come into his home and hide himself and the guns from the police. The Government intends to offer the incriminating statements against Defendant at trial, asserting that Defendant was not "in custody" when he made the statements, and so <u>Miranda</u> warnings were not required.

Whether a person subjected to questioning is "in custody," such that they are entitled to <u>Miranda</u> warnings, is to be determined based on a totality of the circumstances. *United States v. Hargrove*, 625 F.3d 170, 178 (4th Cir. 2010) (citing *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984), *itself quoting California v. Beheler*, 463 U.S. 1121, 1125, (1983) (per curiam)) (stating that a person not yet arrested is nonetheless "in custody" when "under the totality of the circumstances, a suspect's freedom of action is curtailed to a degree associated with formal arrest") (quotation marks omitted). In making this determination, we ask "how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). There are a variety of factors to be taken into consideration, including whether the suspect has been told that he is under arrest. *Hargrove*, 625 F.3d at 180 (citing *United States v. Colonna*, 511 F.3d 431, 435 (4th Cir. 2007). Other factors include where the questioning takes

place, the demeanor of officers, who is present, and freedom to move about during the questioning. For example, the Fourth Circuit in *Hargrove* held that custodial interrogation did not occur when defendant was interviewed in his kitchen, with freedom to move throughout his house. 625 F.3d at 177-82. In contrast, the Fourth Circuit in *Colonna* held that a suspect, who had been told he was not under arrest, had nonetheless been subjected to custodial interrogation when questioned in an FBI vehicle, "because Colonna's interrogation occurred in a police dominated environment where the agents did everything to make Colonna, or any reasonable man believe that he was not free to leave." 511 F.3d at 436.

    The Court finds in this instance that Defendant was in custody when questioned in the attic about the firearms there. Finding that officers failed to provide <u>Miranda</u> warnings to the Defendant, his statements are inadmissible. Several facts require this conclusion. First, at least six - and probably more- officers participated in the "knock and talk" and immediate removal of Defendant and Ms. Jones from their home to the sidewalk. That officers were searching inside for Carroll heightened tensions for everyone, officers and the Defendant included. The Court credits the Defendant's and Ms. Jones's testimony that they were placed in handcuffs for some period while they remained outside in the presence of several other officers. After arresting Carroll and completing at least a sweep of the premises, the agents decided to question Defendant about the firearms found in the attic. To do this, one or more officers escorted Defendant from outside into the attic, where the officers confronted Defendant about the guns and his felony record. Their questioning was accusatory and clearly aimed at having Defendant incriminate himself. It was after Defendant did so that officers essentially informed him that he was not going to be arrested at that time for the guns, but instead could consider becoming an informant.

This setting was custodial. Defendant was led out of his home and to the sidewalk, where he and Ms. Jones were separated and handcuffed at some point, and there they remained in the company of several officers while the search and arrest of Carroll were completed. Then, officers brought Defendant back inside and to the attic, apparently while Ms. Jones remained in a police car, to question him. The interrogation took place in the attic where the guns and several officers remained. At this point it is unclear whether Defendant remained handcuffed, but a custodial setting had already been created. The setting, nature and purpose of the questioning reasonably conveyed to Defendant that he was being held for the guns and had to answer their questions. Thus, based on the totality of the circumstances, although questioning took place in Defendant's residence, the situation was more akin to the "police dominated environment" of *Colonna* rather than the more amicable setting of *Hargrove*. Whether the officers intended to offer Defendant a chance to help himself by cooperating is not controlling; rather, we focus on how a "reasonable man" in Defendant's position would have viewed the circumstances. *Berkemer*, 468 U.S. at 442. Regardless of the officers' aims, given the totality of the circumstances, their questioning in the absence of Miranda warnings renders Defendant's responses inadmissible.

## II. Arrest and Statements of June 20, 2012

On June 20, 2012, Officer Nethercutt noticed a vehicle which looked like one he recalled from the scene of the December 9, 2011 search at Defendant's residence. He believed Defendant to be operating the vehicle and wanted to talk to Defendant, apparently to see if Defendant would agree to be an informer. After both he and the Defendant parked their respective vehicles, he approached Defendant on the public sidewalk. Officer Nethercutt identified himself, explained that he wanted to talk to Defendant and asked Defendant his name, though the officer was certain

of whom Defendant was. According to the officer, Defendant identified himself as "Mike Waters." When asked for identification, Defendant claimed he had none, despite the officer observing a wallet in Defendant's pocket. Just minutes after Officer Nethercutt had approached Defendant, Agent Ray arrived, walked up to the Defendant, and began talking with him. Agent Ray testified that Defendant gave him a false name; Defendant denies this, and testified that he and Ray recognized each other immediately. Regardless, at this point the officers had only initiated a citizen-police encounter of short duration, not a Terry stop. *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (noting that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions."); *Florida v. Royer*, 460 U.S. 491, 497 (1983); *United States v. Lewis*, 606 F.3d 193, 197-98 (4th Cir. 2010).

Defendant's inability to produce identification quickly resulted in Agent Ray determining that Defendant had no driver's license. Having been observed operating a vehicle just minutes earlier, Defendant was informed that he was under arrest. At this point, the encounter had escalated to a Terry stop- to the extent the agent had asked Defendant for a driver's license, and Defendant was unable to produce one- and then an arrest based on probable cause.

Of course, the officers were also hoping Defendant would agree to cooperate with them and act as an informer; that was the reason they wanted to talk with him, but that subjective motive is immaterial. Their conduct is to be viewed from an objective standpoint, even if a pretext for some other purpose existed. The Defendant's initial suspicious responses and then his lack of a driver's license, when he had just been seen driving the vehicle, provided objective reasons for a brief detention for questioning and then an arrest. No violation of his Fourth Amendment rights occurred. Therefore, the Court **DENIES** on the merits Defendant's Motion to Suppress Evidence from Unlawful Stop (ECF No. 26).

In his motions, Defendant also challenged that a recorded statement, made after this arrest while Defendant was in custody at the police station, was taken without the officers providing him with Miranda warnings. At the hearing, Defendant candidly admitted that he had received Miranda warnings in the holding cell prior to the recorded interview. The Court therefore **DENIES** in part as moot Defendant's Motion to Suppress Defendant's Oral and Audio Statements, specifically those portions regarding Defendant's statements on June 20, 2012 (ECF No. 27).

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel and the defendant, the U.S. Attorney's Office, the U.S. Probation Office, and the U.S. Marshals' Service.

ENTER: September 7, 2012

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE